# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————————

№ 17-CV-6629 (LDH) (RER)

———————————————

RODNEY ROBERT PIERRE,

Plaintiff,

VERSUS

COUNTY OF NASSAU, ET AL.,

Defendants,

———————————

**MEMORANDUM AND ORDER**

July 21, 2022

———————————

**RAMON E. REYES, JR., U.S.M.J.:**

Rodney Robert Pierre ("Pierre" or "Plaintiff"), proceeding *pro se*, brings this civil rights action

against the County of Nassau, the Nassau County Police Department, Nassau County Jail Sheriffs,

Nassau County Jail/Superintendent, Nassau County Corrections Sergeant Drake, (collectively, the

"County"), the Elmont Police Department, the Town of Elmont, and various John and Jane Doe

Defendants[1] asserting claims for deprivation of his constitutional rights pursuant to 42 U.S.C.

§ 1983 and the New York State Constitution. (ECF No. 1 ("Compl.")). Plaintiff now moves to

amend his complaint "to correct and submit a specific and accurate complaint," to substitute

several John Doe Defendants and add additional defendants as named parties, and to add new

---

[1] Plaintiff's original complaint specifically names: John Doe 1–20 Elmont Police Department, Jane Doe Nassau County Sheriff, John Doe 1–10 and Jane Doe Nassau County Medical Center Hospital Nurses and Doctors, John/Jane Doe Sheriff of Police Elmont Police Department, John Doe, Jane Doe, Nassau County Jail/Superintendent, Sergeant Drake, John Doe 1–10 Correctional Center, and John Doe/Jane Doe 1–10 Elmont Police Department.

claims regarding additional constitutional violations near the time of his arrest and more recent

retaliatory conduct. (ECF No. 52 ("Mot. to Amend") at 3, 8–12). Plaintiff separately moves to

compel discovery and for sanctions against the County for alleged discovery deficiencies. (ECF

No. 53 ("Mot. for Discovery & Sanctions")).

For the reasons set forth below, Plaintiff's motion to amend the complaint is granted in part,

and denied in part.[2] Plaintiff's motion for discovery and sanctions is denied in its entirety.

## BACKGROUND

I.   Facts[3]

On or about October 18, 2014, police officers pulled over a taxi in Elmont, New York and

asked that Plaintiff step out of the vehicle. (Compl. at 3; ECF No. 17 ("Pl's Am. Facts") at 3).

---

[2] "A magistrate judge's grant of a motion to amend a complaint is generally considered non-dispositive." *Gordon v. Tencent Music Entertainment Grp.*, No. 19-CV-5465 (LDH) (TAM), 2021 WL 6113263, at *4 n.5 (E.D.N.Y. Dec. 27, 2021) (citing *Lubavitch of Old Westbury, Inc. v. Inc. Vill. of Old Westbury, New York*, No. 08-CV-5081 (DRH) (ARL), 2021 WL 4472852, at *8–9 (E.D.N.Y. Sept. 30, 2021); *Prosper v. Thomson Reuters Inc.*, No. 18-CV-2890 (MKV) (OTW), 2021 WL 535728, at *1 n.1 (S.D.N.Y. Feb. 11, 2021)).

[3] The following facts are derived from Plaintiff's original complaint and Plaintiff's statement of "Amended Facts Pursuant to Court Order." (Compl.; ECF No. 17 ("Pl's Am. Facts")). Pursuant to the Court's order conditionally granting Plaintiff leave to proceed *in forma pauperis* provided that Plaintiff could "demonstrate[e] that his claims pertaining to any event prior to his incarceration . . . should not be dismissed as barred by the statute of limitations" (ECF No. 9 at 3, 6–7), Plaintiff submitted a letter to the Court indicating that his complaint was timely filed pursuant to the prison mailbox rule (ECF No. 11 at 1, 3) and a letter providing a statement of "Amended Facts Pursuant to Court Order" containing additional factual allegations underlying his complaint. (Pl's Am. Facts at 3–6).

Although Plaintiff did not formally seek leave to amend his pleading, his "Amended Facts" were mailed to the Court within 21 days of service (*see* ECF No. 15 (indicating service on July 17, 2018); Pl's Am. Facts at 7 (indicating that a copy was mailed to the Court on July 19, 2018)), and may be deemed an amendment as a matter of course. Fed. R. Civ. P. 15(a)(1)(A); *see also Javier v. Russo*, No. 21-CV-7097 (LTS), 2022 WL 254207, at *1 (S.D.N.Y. Jan. 25, 2022) (applying prison mailbox rule to amended pleadings). Further, the "Amended Facts" were accepted as true by the County in its motion to dismiss (ECF No. 33-2), and by the Court in denying the motion to dismiss (ECF No. 35 at 1 n.2, 4–5) and plaintiff's motion for appointment of counsel (ECF No. 41 at 2–3).

Accordingly, the Court considers Plaintiff's complaint to have been effectively amended by his statement of "Amended Facts," rendering the motion now before the Court a motion for a second amended complaint. *See, e.g., Perez v. Ponte*, 236 F. Supp. 3d 590, 633 (E.D.N.Y. 2017), *adopted by*, 2017 WL 1050109 (E.D.N.Y. Mar. 15, 2017) (noting that the court "compared the allegations in [p]laintiff's proposed amended complaint against those stated in his original complaint as amplified by his opposition papers," and concluding that "the court has already effectively considered these additional facts in adjudicating [d]efendant's motion to dismiss.").

When Plaintiff reached for his phone to call his lawyer and question the stop, "more than twenty (20) officers," including "Arresting Police officers McJacobs, Sandy, and Griffin," (the "Alleged Arresting Officers") physically and verbally attacked Plaintiff "for approximately one hour." (Compl. at 3; Pl's Am. Facts at 3).

After the attack, the Alleged Arresting Officers transported Plaintiff to a hospital,[4] where they continued to threaten Plaintiff and instructed certain John/Jane Doe nurses and doctors to deny Plaintiff medical treatment, including his requests that they x-ray his back and stitch wounds on his left hand. (Compl. at 2–3; Pl's Am. Facts at 3–4). As a result of their failure to treat his injuries, Plaintiff alleged that he "still ha[s] multiple problems dealing with [his] back and pain in [his] shoulder" (Compl. at 3) and has "permanent scaring of [his] left hand and left ear" (Pl's Am. Facts at 3). Plaintiff also alleges that, at the hospital, "officer Sandy stole [Plaintiff's] diamond studded watch with a value of seven thousand dollars." (Pl's Am. Facts at 3).

After the hospital, Plaintiff was brought to Nassau County Jail, where he "was ma[c]ed, attack[ed], sexually assaulted and thrown in the box." (Compl. at 3). The Alleged Arresting Officers reportedly "told medical staff" at the jail "not to give [Plaintiff] his mental health medication" (Pl's Am. Facts at 4), and jail personnel "denied [Plaintiff his] mental health medication before [he] went to court" (Compl. at 3). When Plaintiff told Corrections Sergeant Drake that he would inform his lawyer that he was "not receiving proper mental medication," Drake ordered other officers to "teach [him] a lesson" and to attack Plaintiff. (Compl. at 3; Pl's Am. Facts at 4). Plaintiff's statement of Amended Facts described a number of retaliatory attacks in detail, including an attack by "a white supremacist" who "splashed urine on" Plaintiff; an attack

---

[4] The hospital is referred to as "NUMC Hospital" in the original complaint (Compl. at 2–3) as "Nassau County Medical Center" or "NCMC" in the statement of amended facts, (Pl's Am. Facts at 3), and as "NUMC Nassau Medical Center" in the proposed amended complaint (Mot. to Amend at 8).

3

by "one black correctional officer and two (2) white correctional officers and one corporal from the reception cell blocks" who had "sprayed four cans of mace on claimant in approximately 30 minutes"; and, following the mace attack, an instance in which correctional officers forced Plaintiff "to shower with dirty soap that was left from other inmates" in the facility's special housing unit. (Pl's Am. Facts at 4–5).

After continued harassment and mistreatment in the special housing unit, including death threats by an unnamed correctional officer following Plaintiff's refusal to sign a disciplinary ticket, Plaintiff relayed his allegations to Sergeant Anderson of the Nassau County Jail, who subsequently "set up an interview" with the Inspector General's office. (Compl. at 4; Pl's Am. Facts at 5). On or about November 26, 2014, Plaintiff reports filing grievances with two officials from the Inspector General's office regarding his allegations of assault, sexual assault, and denial of medical attention. (Compl. at 4; Pl's Am. Facts at 5–6). During that interview, Plaintiff was advised to speak quietly so that eavesdropping corrections officers could not hear his complaints. (Pl's Am. Facts at 6). Further, Plaintiff alleges that a "correctional officer by the name of Christintine and other Defendants used intimidation during the IG investigation." (Pl's Am. Facts at 6).

Plaintiff reports that despite the Inspector General's office "promise[] to have [Plaintiff; removed from [the special housing unit] and press charges against these officer, this never took place[.]" (Pl's Am. Facts at 6). With no additional response from the Inspector General's office, Plaintiff reported his concerns to the Governor of New York. (Compl. at 4). Sometime in 2017, in response to his letter to the Governor, Plaintiff received a call from the Nassau County Sheriff's office about his allegations. (Compl. at 4).

Taking these incidents together, Plaintiff alleged that he suffered "shoulder injuries, back injuries, scare [sic] on left hand, denial of medical attention, [and a] PREA violation of correction

officers." (Compl. at 3). As a result of these violations of his constitutional rights, Plaintiff seeks "30 million dollars for pain and suffering, mental anguish, cost of future medical fees, [the cost of an] operation on [his] back and shoulder and future physical therapy, [and] personal humiliation." (Compl. at 5).

II.    Procedural History

Plaintiff's complaint was filed November 8, 2017. (Compl.). After Judge Azrack conditionally approved Plaintiff's application to proceed *in forma pauperis* (ECF No. 9), and after Plaintiff submitted a letter containing his statement of Amended Facts (Pl's Am. Facts), the Court granted the County leave to file a motion to dismiss for failure to state a claim (Order dated 02/08/2019; *see also* ECF Nos. 31–33), and subsequently denied the motion (ECF No. 35). This Court then set a schedule for discovery and directed Plaintiff to file a new motion to appoint counsel. (Minute Entry dated 10/07/2020; *see also* ECF No. 39). The Court denied Plaintiff's motion on March 19, 2021. (ECF No. 41). Following a number of discovery extensions (*see* Order dated 03/10/2021; Order dated 03/31/2021), the Court advised the parties at a telephone conference that paper discovery was considered largely complete and ordered the parties to complete all depositions before July 1, 2021. (Minute Entry dated 06/02/2021). Soon after the telephone conference, Plaintiff filed the motions now before the Court. (Mot. to Amend; Mot. for Discovery & Sanctions).[5]

---

[5] Plaintiff's Motion to Amend appears to contain two proposed amended complaints. First, a document captioned "Rodney Robert Pierre . . . versus the County of Nassau, etc." which lists seventeen numbered paragraphs (Mot. to Amend at 5–7; *see also* ECF No. 49 (listing sixteen of the seventeen numbered paragraphs)), and second, a document labelled "AMENDED COMPLAINT" which lists all the named defendants and seeks to "add on" additional defendants. (Mot. to Amend at 8–12). For the purposes of this motion, the Court considers the document labelled "AMENDED COMPLAINT" to be Plaintiff's proposed amended complaint.

Construed liberally,[6] Plaintiff's motion to amend seeks to (1) substitute seven John Doe Defendants with named defendants or defendants with more specific descriptions, and add new parties from the Inspector General's office; (2) add new claims regarding additional constitutional violations near the time of his arrest and more recent retaliatory conduct; and, (3) clarify certain factual allegations concerning the existing defendants regarding his initial complaint. (Mot. to Amend at 8–12). Plaintiff's motion for discovery and sanctions requests that the Court compel the County to produce video footage or photographs of the incidents referenced in his complaint, and sanction the County for its failure to preserve and produce such footage. (Mot. for Discovery & Sanctions at 1–3). The County opposes both motions. (ECF No. 54 ("Def's First Opp."); ECF No. 59 ("Def's Second Opp.")).

## DISCUSSION

I.    Motion to Amend

Under Federal Rule of Civil Procedure 15, which generally governs motions to amend pleadings,[7] "[i]t is 'within the sound discretion of the district court to grant or deny leave to

---

[6] "A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004) ("[A] court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations."). "However, the duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it." *Mills v. Miteq, Inc.*, No. 06-CV-752 (SJF) (AKT), 2007 WL 2908218, at *3 (E.D.N.Y. Sept. 14, 2007) (citing *Joyner v. Greiner*, 195 F.Supp.2d 500, 503 (S.D.N.Y.2002)), *adopted by* 2007 WL 2932816 (Oct. 3, 2007); *see also Jing v. Mayorkas*, No. 21-CV-4880 (WFK), 2022 WL 2154543, at *2 (E.D.N.Y. June 14, 2022) ("[T]he Court need not argue a *pro se* litigant's case nor create a case for the *pro se* which does not exist.") (internal quotation marks omitted).

[7] "[W]here . . . a motion to amend is filed after a deadline set by the Court in [a] Case Management and Scheduling Order, the motion is subject to the more demanding standard of Rule 16(b), which requires 'good cause' for leave to amend." *CSX Transportation, Inc. v. Emjay Env't Recycling, Ltd.*, No. 12-CV-1865 (JS) (AKT), 2013 WL 12329546, at *2 (E.D.N.Y. Sept. 18, 2013) (citing *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000); *Ricciardi v. Kimco Facilities Servs. Corp.*, No. 10-CV-5731, 2012 WL 6761533, at *1 (E.D.N.Y. June 12, 2012) *adopted by* 2013 WL 42416 (Jan. 3, 2013); *Alexander v. Westbury Union Free Sch. Dist.*, 829 F. Supp. 2d 89, 117 (E.D.N.Y. 2011); *Sokol Holdings, Inc., v. BMB Munai, Inc.*, 05 Civ. 3749, 2009 WL 2524611, at *7 (S.D.N.Y. Aug. 14, 2009)). However, where, as here, such a deadline is not set, a "plaintiff does not have to meet the 'good cause'

amend.'" *Hart v. Suffolk Cnty.*, No. 17-CV-5067 (JS) (SIL), 2020 WL 4738243, at *2 (E.D.N.Y. Aug. 15, 2020) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). "Motions to add parties are governed by Fed. R. Civ. P. 21 and are afforded the 'same standard of liberality afforded to motions to amend pleadings under Rule 15.'" *Essani v. Earley*, No. 13-CV-3424 (JMA) (SIL), 2018 WL 3785109, at *4 (E.D.N.Y. Aug. 9, 2018) (quoting *Addison v. Reitman Blacktop, Inc.*, 283 F.R.D. 74, 79 (E.D.N.Y. 2011)), *adopted by*, 2018 WL 4100483 (Aug. 28, 2018); *see also Amaya v. Roadhouse Brick Oven Pizza, Inc.*, 285 F.R.D. 251, 253 (E.D.N.Y. 2012) ("There is . . . little practical difference between Rule 15 and Rule 21 since they both leave the decision whether to permit or deny an amendment to the district court's discretion.").

In general, courts should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Accordingly, "[u]nless there is a showing of bad faith, undue delay, futility or undue prejudice to the non-moving parties, the district court should grant leave to amend." *Ghaly v. Nissan Motor Acceptance Corp.*, No. 21-CV-1613 (JS) (JMW), 2021 WL 2550389, at *1 (E.D.N.Y. June 22, 2021) (quoting *Adlife Mktg. & Commc'ns Co. v. Best Yet Mkt., Inc.*, No. 17-CV-02987 (ADS) (ARL) 2018 WL 4568801, at *1 (E.D.N.Y. Sept. 24, 2018)); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (absent "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [or] futility of [the] amendment" leave to amend "should, as the rules require, be freely given."). "The party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial." *Fahlund v. Nassau Cnty.*, 265 F. Supp. 3d 247, 253 (E.D.N.Y. 2017) (quoting *Fariello v. Campbell*, 860 F. Supp. 54, 70 (E.D.N.Y. 1994)).

---

standard." *Smith v. Westchester Cnty. Dep't of Corr.*, No. 07 Civ. 1803 (SAS), 2012 WL 527222, at *6 (S.D.N.Y. Feb. 15, 2012), *aff'd sub nom. Smith v. Gottlob*, 518 F. App'x 41 (2d Cir. 2013).

*Pro se* plaintiffs are typically "given the opportunity 'to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated'" *Belfer v. Fid. Nat'l Title Grp.*, No. 18-CV-783 (JMA) (ARL), 2018 WL 6002905, at *4 (E.D.N.Y. Nov. 15, 2018) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)), and "a *pro se* plaintiff's proposed amended complaint should be construed to raise the strongest arguments it suggests." *Ghaly*, 2021 WL 2550389, at *1 (quoting *Grullon v. City of New Haven*, 720 F.3d 133, 140 (2d Cir. 2013)). However, "while '*pro se* plaintiffs are generally given leave to amend a deficient complaint, a district court may deny leave to amend when amendment would be futile.'" *Belfer*, 2018 WL 6002905, at *4 (quoting *Shomo v*, 579 F.3d at 183)).

Courts typically consider amendment futile "if the proposed claim would fail to state a claim under Federal Rule of Civil Procedure 12(b)(6)." *Wilson v. City of New York*, No. 18 CV 7301 (AMD) (LB), 2019 WL 4248470, at *1 (E.D.N.Y. July 11, 2019), (citing *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012); *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)), *adopted by*, 2019 WL 4247542 (Sept. 6, 2019). A court may deny leave to amend as futile where the proposed amended claims are time-barred. *See, e.g.*, *421-A Tenants Ass'n, Inc. v. 125 Ct. St. LLC*, 760 F. App'x 44, 51 (2d Cir. 2019) (affirming denial of motion for leave to amend where proposed amendments did not change the fact that claims were barred by the statute of limitations); *Anderson v. Inc. Vill. of Hempstead*, No. 15-CV-1485 (JS) (SIL), 2020 WL 999856, at *2 (E.D.N.Y. Mar. 2, 2020) (quoting *Northbrook Nat. Ins. Co. v. J & R Vending Corp.*, 167 F.R.D. 643, 647–48 (E.D.N.Y. 1996) ("A motion to amend the complaint is futile if the claims sought to be added are barred by the relevant statute of limitations."). Accordingly, where, as here, a plaintiff seeks to amend the complaint to amend the

complaint after the statute of limitations has expired,[8] the amendments must relate back to the date of the original filing.

In general, Rule 15(c)(1)(A) permits an amended pleading to relate back when "the law that provides the applicable statute of limitations allows relation back." Fed. R. Civ. P. 15(c)(1)(A). With respect to claims, Rule 15(c)(1)(B) allows relation back when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). "Where the amended complaint does not allege a new claim but renders prior allegations more definite and precise, relation back occurs." *Slayton v. Am. Exp. Co.*, 460 F.3d 215, 228 (2d Cir. 2006), *as amended* (Oct. 3, 2006). And, "[w]here the amendment would involve a new cause of action, the district court may deny leave unless the original complaint gave the defendant fair notice of the newly alleged claims." *Charlot v. Ecolab, Inc.*, 97 F. Supp. 3d 40, 70 (E.D.N.Y. 2015) (internal quotation marks omitted) (quoting *O'Hara v. Weeks Marine, Inc.,* 294 F.3d 55, 68 (2d Cir.2002)). With respect to substitute parties, Rule 15(c)(1)(C) permits relation back where "the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C); *see also*

---

[8] "In New York, Section 1983 claims are governed by a three-year statute of limitations." *Aouatif v. City of New York*, No. 07-CV-1302 (RRM) (JO), 2019 WL 2410450, at *14 (E.D.N.Y. May 31, 2019) (citing *Vega v. Hempstead Union Free Sch. Dist.,* 801 F.3d 72, 79 (2d Cir. 2015)), *aff'd*, 811 F. App'x 711 (2d Cir. 2020). The alleged constitutional violations described in the original complaint as previously amended occurred between October and November of 2014. (Compl. at 3–5; Pl's Am. Facts at 3–6). As previously noted by the Court, Plaintiff's complaint was filed "23 days before the end of the statute of limitations period." (ECF No. 35 at 5).

*Ceara v. Deacon*, 916 F.3d 208, 211 (2d Cir. 2019) (describing conditions in which relation back is permitted).

A.  Plaintiff May Not Name or Substitute New Defendants

Construed liberally, Plaintiff's motion to amend seeks to substitute seven John Doe Defendants with named defendants or defendants with more specific descriptions. (*See* Mot. to Amend at 3–4 (requesting leave "to add specific Defendants as I list them by name or agency instead of 1-10 John Doe and 1-10 Jane Doe as I am doing my best to give specific information to my complaint" and discussing permissibility of amendment "to correct a misnomer or misdescription of a defendant"). Specifically, Plaintiff intends to substitute three of the John Doe defendants associated with the Elmont Police Department with the three Alleged Arresting Officers—McJacobs, Sandy, and Griffin—who Plaintiff alleges used excessive force in arresting him and unlawfully instructed hospital staff to withhold treatment for his injuries. (ECF No. 52 at 2–3, 5, 8). Plaintiff also intends to substitute four John Doe Defendants associated with the Nassau County Jail: two correctional officers and one correctional corporal that he alleges maced him in intake, and with correctional officer Christantine, who Plaintiff previously indicated had intimidated him in response to the Inspector General investigation, but now alleges sexually assaulted him. (*Id.* at 8). Plaintiff also seeks to add as new parties the Inspector General's office and "the IG Officers" that heard his complaints "for failure to protect against cruel and unusual punishment." (*Id.* at 8, 11).

The County submits that these amendments are overdue, as Plaintiff "has waited almost [seven] years after his arrest to name" the officers despite the availability of that information through his criminal proceedings and through other record requests, and are futile, as the officers that Plaintiff seeks to name are not mentioned in his arrest paperwork and are unknown to the

County. (Def's First Opp. at 2; Def's Second Opp. at 4). Plaintiff counters that McJacobs, Griffin and Sandy were previously mentioned in his statement of Amended Facts and that his listing of several Jane Doe and John Doe defendants in his original complaint was sufficient. (*See* ECF No. 57 ("Pl's Reply") at 3–4). Plaintiff also argues that he has made several record requests, including FOIL requests to multiple agencies, and that those requests have been ignored or denied. (*Id.* at 3).

1.  Plaintiff's Proposed New Parties Do Not Relate Back under Rule 15(c)(1)(C)

It is well established in this Circuit that "an amendment to replace a John Doe defendant is made 'not to correct a mistake but to correct a lack of knowledge' and is therefore not a mistake under Rule 15(c)(1)(C)." *Ceara*, 916 F.3d at 213 (quoting *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 470 (2d Cir. 1995)); *see also Hogan v. Fischer,* 738 F.3d 509, 518 (2d Cir. 2013) ("This Court's interpretation of Rule 15(c)(1)(C) makes clear that the lack of knowledge of a John Doe defendant's name does not constitute a 'mistake of identity.'"); *Anderson*, 2020 WL 999856, at *2 (internal quotation marks omitted) ("[I]t is well-established that John Doe pleadings generally cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued."). "This standard applies equally to *pro se* litigants." *Franks v. City of New York*, No. 13-CV-6254 (KAM) (RER), 2017 WL 1194500, at *5 (E.D.N.Y. Mar. 31, 2017) (citing *Perez v. New York City Police*, 234 F.3d 1262, 2000 WL 1715248, at *1 (2d Cir. 2000); *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999)). Accordingly, "relation back is precluded under Rule 15(c)(1)(C) where a plaintiff does not know the names of the officers against whom he seeks to assert a § 1983 claim." *Chow v. Shorefront Operating LLC*, No. 19-CV-3541 (FB) (SJB), 2021 WL 225933, at *5 (E.D.N.Y. Jan. 20, 2021) (citing *Hogan*, 738 F.3d at 518; *Scott v. Village of Spring Valley*, 577 F. App'x 81, 82–83 (2d Cir. 2014)).

11

Similarly, courts in this Circuit do not apply Rule 15(c) to permit relation back where a plaintiff seeks to add an additional party as a defendant after the statute of limitations has expired. *See, e.g.*, *Whetsel v. Montas,* No. 19-CV-2687(JS)(AYS), 2021 WL 1550514, at *3 (E.D.N.Y. Apr. 19, 2021) (quoting *Jhagroo v. Brown*, No. 16-CV-03426, 2020 WL 3472424, at *2 (S.D.N.Y. June 25, 2020)) ("Rule 15(c)(1)(C) 'applies only where an amendment changes the party or the naming of the party against whom a claim is asserted—not where, as here, Plaintiff seeks to add new parties.'"); *Atakhanova v. Home Fam. Care Inc.,* No. 16-CV-6707 (KAM) (RML), 2019 WL 2435856, at *6 (E.D.N.Y. Feb. 19, 2019) (declining to apply relation back doctrine where plaintiffs "do not seek to substitute" one defendant for another, but seek to add an additional defendant); *Pikos v. Liberty Maint., Inc.*, 09 CV 4031, 2015 WL 6830670, at *3 (E.D.N.Y. Nov. 6, 2015) ("Courts in this circuit have held relation back is only permitted where plaintiff named the wrong party in the original complaint, and not where plaintiff named one but not all of the right defendants.").

Notwithstanding Plaintiff's reference to the names McJacobs, Griffin, Sandy, and Christiantine in the statement of Amended Facts (Pl's Am. Facts at 3, 6)—which was itself filed after the statute of limitations expired and has not been construed as a request to add those individuals as parties— Plaintiff's attempt to add those individuals as substitutes for the John Doe defendants named in the original complaint amounts to an attempt to add additional parties, and is not permitted under Rule 15(c)(1)(C). *See, e.g.*, *Hogan*, 738 F.3d at 518; *Anderson*, 2020 WL 999856, at *2. Plaintiff's belated attempt to add the Inspector General and its employees as new parties to this case long after the statute of limitations has expired is similarly not permitted under Rule 15(c)(1)(C). *See, e.g.*, *Whetsel*, 2021 WL 1550514, at *3; *Atakhanova*, 2019 WL 2435856, at *6.

12

2. Plaintiff Has Not Demonstrated Diligence Required For Relation Back Under Rule 15(c)(1)(A) and N.Y. C.P.L.R. § 1024

Alternatively, "the fact that relation back may be unavailable under Rule 15(c)(1)(C) does not preclude the possibility that it is available under state law." *Joseph v. Bute*, No. 16-CV-2004 (PKC) (LB), 2019 WL 181302, at *4 n.10 (E.D.N.Y. Jan. 9, 2019). Since "Section 1983 derives its statute of limitations from state law," the Court "may find that relation back is permitted under N.Y. C.P.L.R. § 1024" and Fed. R. Civ. P. 15(c)(1)(A). *Id.* (citing *Hogan*, 738 F.3d at 518). Section 1024 provides: "a party who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is known. If the name or remainder of the name becomes known all subsequent proceedings shall be taken under the true name and all prior proceedings shall be deemed amended accordingly." N.Y. C.P.L.R. § 1024. Under that section, New York courts "permit John Doe substitutions *nunc pro tunc*" provided that two threshold requirements are met: "First, the party must exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name. Second, the party must describe the John Doe party 'in such a form as will fairly apprise the party that he is the intended defendant." *Hogan*, 738 F.3d at 518–19 (citations omitted).

With respect to the diligence prong, in particular, "a plaintiff must show that he or she made *timely* efforts to identify the correct party *before the statute of limitations expired*." *Bute*, 2019 WL 181302, at *5 (internal quotation marks omitted) (emphasis added) (quoting *Strada v. City of New York,* No. 11-CV-5735 (MKB), 2014 WL 3490306, at *5 (E.D.N.Y. July 11, 2014)). Such diligence may include submitting timely FOIL requests, making discovery requests, and submitting informational inquiries to government officials to obtain information about the defendant's identity. *Id.* (citing *Barrett v. City of Newburgh,* 720 Fed. App'x 29, 33 (2d Cir. 2017);

13

*Hogan*, 738 F.33d at 519; *Medina v. Seiling,* No. 14-CV-6034 (VSB) 2018 WL 1603857, at *7 (S.D.N.Y. Mar. 29, 2018); *Ceara v. Deacon*, 68 F. Supp. 3d 402, 410 (S.D.N.Y. 2014)); *see also Baptiste v. Suffolk Cnty.,* No. 19-CV-42 (RPK) (VMS), 2022 WL 1224570, at *4–5 (E.D.N.Y. Apr. 26, 2022) (quoting *Boston v. Suffolk County*, 326 F. Supp. 3d 1, 13 (E.D.N.Y. 2018) ("To identify unknown parties after filing, a plaintiff is advised to serve discovery demands upon any known parties . . . or otherwise act with diligence.").

Plaintiff claims that he has "requested over these [seven] years many FOIL request to multiple agencies including Defendants and this Court and all my request was not replied to by the agencies and Defendants and denied by this Court." (Pl's Reply at 3). However, Plaintiff does not indicate the substance of these requests, whether they sought specific information regarding the identities of the individuals described in the complaint, or the extent to which they were made before the statute of limitations expired, such that he has adequately established the diligence prong. Further, notwithstanding his *pro se* status, that Plaintiff continues to misidentify the arresting officers to date despite having received the Nassau County Police Department Crime Report listing his arresting officers further demonstrates a lack of diligence on his part. (*See* ECF No. 59-2 (report listing Russell R. Bastone, Steve BenJacob, Tristan Gregory Cetto, Daniel B. Fels, Gregory E. Martin, Roy E. McComb, Edward L. Sholl, as the officers associated with Plaintiff's arrest)); *see also Vasconcellos v. City of New York*, No. 12-CV-8445 (CM) 2014 WL 4961441, at *9 (S.D.N.Y. Oct. 2, 2014) ("Vasconcellos did nothing to exercise due diligence prior to the running of the statute—or for that matter, after it ran."); *cf. Bute*, 2019 WL 181302, at *5 (finding diligence where "prior to filing suit and within one year of the alleged misconduct, [p]laintiff sought to learn [d]efendants' identities by filing a formal CCRB complaint," and "made several additional efforts to ascertain [d]efendants' identities before the expiration of the statute of limitations," including a

14

FOIL request, attempts to contact plaintiff's criminal lawyers at the Legal Aid Society, and attempts to subpoena the Legal Aid Society and the CCRB).

Because Plaintiff has not adequately demonstrated diligence in attempting to identify the John Doe defendants prior to the expiration of the statute of limitations, he has not satisfied the requirements of N.Y. C.P.L.R. § 1024 such that relation back is warranted. Accordingly, as Plaintiff's proposed amendments with respect to the addition of new or substitute parties are time-barred and do not relate back, and are therefore futile, the Court denies his motion to amend with respect to those requests.

B. <u>Plaintiffs' New Claims Are Time Barred and Do Not Relate Back</u>

"For a newly-added claim to relate back under Rule 15(c)(1)(B), 'the basic claim must have arisen out of the conduct set forth in the original pleading.'" *ASARCO LLC v. Goodwin*, 756 F.3d 191, 202 (2d Cir. 2014) (quoting *Slayton v. Am. Express Co.*, 460 F.3d 215, 228 (2d Cir. 2006)). "[T]he central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading." *Id.* (alteration in original) (quoting *Slayton*, 460 F.3d at 228). Accordingly, "even where an amended complaint tracks the legal theory of the first complaint, claims that are based on an entirely distinct set of factual allegations will not relate back." *Lehman XS Trust v. Greenpoint Mortg. Funding, Inc.*, 916 F.3d 116, 128 (2d Cir. 2019) (quoting *Slayton*, 460 F.3d at 228).

Plaintiff argues that his motion to amend does not seek to assert "any new cause of action against the County but further gives facts, detail and clearification [sic] of [his] complaint[.]" (Mot. to Amend at 2). While Plaintiff continues to pursue a single cause of action under § 1983, the County properly notes that Plaintiff's proposed amended pleading includes a number of new and

distinct factual allegations and raises new constitutional violations for which the predicate facts were not set forth in the original pleading. (Def's First Opp. at 2; Def's Second Opp. at 6). For instance, liberally construed, Plaintiff's initial amended pleading alleged that Plaintiff was denied medical treatment and had his property impermissibly taken from him by a police officer upon arrival at the hospital. (Pl's Am. Facts at 3). Plaintiff's proposed amended pleading now alleges that he was subjected to an unlawful strip search at the hospital following his arrest. (Mot. to Amend at 8). Similarly, Plaintiff's proposed amended pleading contains new factual allegations that he was surreptitiously and unlawfully prescribed mental health medication by the correctional officers and nurses at intake upon arriving at the Nassau County jail. (*Id.* at 9). Further, Plaintiff raises new factual allegations regarding retaliatory conduct arising out of his complaints to the Inspector General. (*See id.* at 11–12 (alleging additional attacks from October 2014 to October 2015 orchestrated by correctional officers and staff, including two separate instances in which other incarcerated individuals threw feces at Plaintiff). Although the Court is sympathetic to Plaintiff's grievances, these allegations are entirely distinct from those set out in the original complaint and the statement of amended facts, and cannot have given the defendants notice of the corresponding claims within the statute of limitations.

Finally, Plaintiff raises new allegations regarding retaliatory conduct in response to his filing this lawsuit by correctional officers at a facility in which he was housed in January 2021. (*See id.* at 12 ("In 2021 January 5, 2021 I was stripped searched and for 2 hours correctional officers T. Decker and W. Atkins, Sergeant Mendez and Rosado read my 1983 from Eastern District Court against Nassau County and the Police department and the Detention Center and made jokes on 1.23.1 at my cubical area 8 cell 8 bed talking about how they are going to get me and they're going to teach me a lesson the same way that it happened back in October."). These allegations similarly

16

do not arise out of the conduct described in the original complaint. Further, Plaintiff does not seek to add these correctional officers or the facility they work for as defendants to the case. Accordingly, these new retaliation claims cannot go forward on a supplemental basis. *Cf. Quintanilla v. Suffolk Paving Corp.,* No. 09-CV-5331 (AKT), 2012 WL 4086805, at *5 (E.D.N.Y. Sept. 17, 2012) (citing *Ke v. 85 Fourth Ave. Inc.*, No. 07–CV–6897, 2009 WL 185949, at *2 (S.D.N.Y. Jan. 22, 2009); *Witkowich v. Gonzales*, 541 F.Supp.2d 572, 590 (S.D.N.Y. 2008)) (permitting plaintiffs "to supplement pleadings to include alleged acts of retaliation" perpetrated by the named defendants that "occurred after the original complaint was filed.").[9]

Accordingly, to the extent Plaintiff seeks to add these new factual allegations and to his complaint, which are otherwise time-barred and do not relate back to the original complaint, the motion to amend is denied.

C.  Plaintiff May Clarify Factual Allegations Raised in His Initial Complaint

Plaintiff argues that his motion to amend does not seek to assert "any new cause of action against the Defendants but further gives facts, detail and clearification [sic] of [his] complaint . . . as there are mistakes in the statement of facts and [his] complaint has been misquoted." (Mot. to Amend at 2). Specifically, Plaintiff expresses concern that orders issued by the Court have misinterpreted his complaint and mischaracterized the facts by describing him as the driver of the taxi that was pulled over in the lead up to his arrest, and by indicating that he stayed in the hospital overnight. (Mot to Amend. at 2 (citing *Pierre v. Cnty. of Nassau*, No. 17-CV-6629 (LDH) (RER), 2020 WL 5369052, at *1 (E.D.N.Y. Sept. 8, 2020)).

---

[9] As the statute of limitations has not run on Plaintiff's retaliation claims against these officers, which accrued on January 5, 2021, Plaintiff may separately pursue a separate lawsuit against those officers and the facility that they work for, if he wishes to do so.

Although Plaintiff is not permitted to add or substitute new defendants, and is not permitted to discuss new allegations and events separate from those occurrences in October through November 2014 described in his complaint, "the Court should grant plaintiff leave to amend his complaint against the existing defendants." *Wilson v. City of New York*, No. 18 CV 7301 (AMD) (LB), 2019 WL 4248470, at *3 (E.D.N.Y. July 11, 2019) (citing *Cintron v. Weissman*, No. 9:14-CV-0116, 2015 WL 5604954, at *5 (N.D.N.Y. Sept. 23, 2015); *Mackey v. Dicaprio*, No. 02 Civ. 1707, 2006 WL 2572111, at *3 (S.D.N.Y. Sept. 7, 2006), *adopted by*, 2019 WL 4247542 (Sept. 6, 2019). Specifically, the Court grants Plaintiff leave to more specifically describe the facts alleged in his complaint and statement of amended facts, to include only his status as a passenger in the taxi, the specific timing of the occurrences alleged in the original complaint, and the extent of the injuries he sustained as a result of the misconduct alleged in the original complaint. The complaint is deemed to be so amended.

## II.   Motion for Discovery and Sanctions

Subject to the relevance and proportionality requirements of Rule 26(b), a party that is served with a discovery request must "produce . . . any designated documents or electronically stored information—including . . . photographs, sound recordings, images and other data or data compilations [.]" Fed. R. Civ. P. 34(a)(1)(A). If a party fails to produce material subject to a request under Rule 34, the "party seeking discovery may move for an order compelling" production. Fed. R. Civ. P. 37(a)(3)(B)(iv). When moving to compel, the movant "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make the disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1); *see also* Local Civil Rule 37.3(a) ("Prior to seeking judicial resolution of a discovery or non-dispositive pretrial dispute, the attorneys for the affected parties or non-party witness shall

attempt to confer in good faith in person or by telephone in an effort to resolve the dispute, in conformity with Fed. R. Civ. P. 37(a)(1).").[10]

"As in every discovery context, a motion to compel is entrusted to the sound discretion of the district court." *Liberty Mut. Ins. Co. v. Kohler Co.*, No. 08-CV-867 (SJF) (AKT, 2010 WL 1930270, at *2 (E.D.N.Y. May 11, 2010) (citing *In re Fitch, Inc.*, 330 F.3d 104, 108 (2d Cir.2003); *United States v. Sanders*, 211 F.3d 711, 720 (2d Cir.2000)). In exercising that discretion, "courts should not grant discovery requests based on pure speculation that amount to nothing more than a fishing expedition." *Norton v. Town of Islip*, No. 04-CV-3079 (PKC) (SIL), 2019 WL 4194271, at *5 (E.D.N.Y. Sept. 4, 2019) (quoting *Collens v. City of New York*, 222 F.R.D. 249, 253 (S.D.N.Y. 2004)); *Alvarado v. GC Dealer Servs. Inc.*, No. 18-CV-2915 (SJF) (SIL), 2018 WL 6322188, at *2 (E.D.N.Y. Dec. 3, 2018) (same); *see also United States v. UBS Sec. LLC*, No. 18-CV-6369 (RPK) (PK), 2020 WL 7062789, at *9 (E.D.N.Y. Nov. 30, 2020) (quoting *Tottenham v. Trans World Gaming Corp.*, No. 00-cv-7697, 2002 WL 1967023, at *2 (S.D.N.Y. June 21, 2002)) ("Discovery requests cannot be based on pure speculation or conjecture.").

Liberally construed, Plaintiff requests that the Court compel the County to produce video footage or photographs of the incidents referenced in his complaint, and sanction the County for its failure to preserve and produce such footage. (Mot. for Discovery & Sanctions at 1–3; *see also* Pl's Reply at 1–2). The County responds that it has produced all responsive photographs, including

---

[10] The meet and confer requirement imposed by the federal and local rules applies equally to *pro se* plaintiffs. *See Vaigasi v. Solow Mgmt. Corp.*, No. 11 Civ. 5088 (RMB) (HBP), 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016) (collecting cases and finding *pro se* "[p]laintiff's failure to meet and confer with defense counsel in good faith is sufficient reason by itself to deny plaintiff's motion to compel"); *Paige v. Lacoste*, No. 10-CV-3356 (SLT) (RER), 2011 WL 6000563, at *1 (E.D.N.Y. Aug. 24, 2011) (denying *pro se* plaintiff's motion to compel discovery, noting that a "plaintiff may move to compel only after attempting to meet and confer regarding disputes over production of documents or other requested discovery."), *adopted by*, 2011 WL 6000392 (Nov. 28, 2011), *judgment vacated on reconsideration*, 2012 WL 3027851 (July 24, 2012); *Avent v. Solfaro*, 210 F.R.D. 91, 95 (S.D.N.Y. 2002) (denying *pro se* plaintiff's motion to compel discovery and for sanctions where plaintiff failed to satisfy "the requirement under the Federal and Local Rules that he first confer with the other party").

"photos taken of the crime scene as well as photos of Plaintiff" (Def's First Opp. at 3; Def's Second Opp. at 7). The County further responds that "[t]he Nassau County Correctional Center is equipped with surveillance cameras which do not and are not intended to record." (Def's First Opp. at 3; Def's Second Opp. at 7). Accordingly, "while Plaintiff has probably observed cameras in locations at the jail," his "assumption that [video footage] exist[s] is speculation on his part." (Def's First Opp. at 3; Def's Second Opp. at 7). The County separately argues that Plaintiff's motion for discovery and sanctions must be denied because Plaintiff did not attempt to contact the County to meet and confer "regarding potential missing video prior to filing the instant motion for sanctions." (Def's Second Opp. at 7).

In reply, Plaintiff concedes that black and white photographs were produced, but argues that "no visible damage can be made from these photographs," and reiterates his conclusory allegation that video footage from surveillance cameras exists and is "deliberately being withheld." (Pl's Reply at 1–2). Plaintiff's motion for discovery and sanctions does not contain the required certification, and his reply papers provide no response to the County's assertion that Plaintiff failed to meet and confer before seeking judicial intervention. (*See* Mot. for Discovery & Sanctions; Pl's Reply; ECF No. 67 ("Pl's Sur-Reply")).

Even if Plaintiff had complied with the meet and confer requirements, this Court could not compel production of video footage that the County has certified does not exist, and would not do so based on Plaintiff's bare speculation and conjecture that such footage must exist. *See, e.g.*, *Norton*, 2019 WL 4194271, at *10 (E.D.N.Y. Sept. 4, 2019) ("[T]he Court concludes that it is inappropriate to compel Plaintiff to produce documents that his counsel certifies do not exist."); *Alvarado v. GC Dealer Servs. Inc.*, No. 18-cv-2915, 2018 WL 6322188, at *2 (E.D.N.Y. Dec. 3, 2018) (denying motion to compel because, *inter alia* "Plaintiff has repeatedly stated . . . that the

20

Requested Documents do not exist"); *Carling v. Peters*, No. 10-cv-4573, 2011 WL 3678839, at *4 (S.D.N.Y. Aug. 19, 2011) ("Other than speculation . . . [the defendant] offers no evidence that [the plaintiff] possesses [the requested] documents"); *Madden v. Abate*, No. 09-cv-145, 2010 WL 11610365, at *2 (D. Vt. Dec. 22, 2010) (denying motion to compel because the plaintiff "insofar as she represents that she has already produced all responsive documents, should be taken at her word"); *Moll v. Telesector Res. Grp., Inc*., No. 04-CV-805S, 2010 WL 4642931, at *3 (W.D.N.Y. Nov. 17, 2010), *vacated in part*, 760 F.3d 198 (2d Cir. 2014) (denying the plaintiff's motion to compel despite the argument that "there must have been" responsive documents, relying on the defendant's representation that a reasonable search found no responsive documents).

Because Plaintiff failed to meet and confer with the County in advance of seeking judicial intervention, and because the Court cannot compel production of video footage that does not exist, Plaintiff's motion to compel discovery and for sanctions is denied.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion to amend is granted to the extent his amended complaint describes his status as a passenger in the taxi (Mot. to Amend at 8), describes that he did not stay at the hospital overnight (*id.* at 9), and describes the injuries he suffered on the night of his arrest and as a result of the attacks previously described in Plaintiff's statement of Amended Facts (*id.* at 8–10). Plaintiff's motion to amend is otherwise denied. Plaintiff's motion for discovery and for sanctions is denied in its entirety.

**SO ORDERED**.

/s/ Ramon E. Reyes, Jr.
RAMON E. REYES, JR.
United States Magistrate Judge

Dated: July 21, 2022
Brooklyn, NY